# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

MONTE HANDY, Individually, and as
Personal Representative of the ESTATE
OF KRISTOPHER HANDY, *et al.*,

                  Plaintiffs,

      v.

JACOB JONES, *et al.*,

                  Defendants.

Case No. 3:24-cv-00178-SLG

## ORDER RE MOTION TO DISMISS

Before the Court at Docket 12 is Defendants Jacob Jones, Jacob Ostolaza, Noel Senoran, and James Stineman's Motion to Dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiffs Monte Handy, individually, and as personal representative of the Estate of Kristopher Handy, on behalf of the Estate and all surviving beneficiaries; Ardell Handy, individually; and Cacy Gould, as next friend of L.H., a minor, A.H., a minor, and M.H., a minor, responded in opposition at Docket 16, and Defendants replied at Docket 17. Oral argument on the motion was held on June 23, 2025. For the following reasons, the Motion to Dismiss is GRANTED in part and DENIED in part.

## BACKGROUND

This case arises from the fatal shooting of Kristopher Handy ("Mr. Handy") by four Anchorage police officers. The incident began in the early hours of May 13, 2024, when Mr. Handy's neighbor called 911 multiple times to report a

disturbance in Mr. Handy's apartment between Mr. Handy and his girlfriend.[1] The facts, as alleged in the Complaint, are that multiple officers arrived at the apartment complex, including Defendants.[2] Using a loudspeaker, Officer Boynton announced the police presence and directed Mr. Handy to come out of the apartment.[3] Officer Boynton announced that the officers had a canine.[4] Mr. Handy exited his apartment with a firearm.[5] Officers instructed Mr. Handy multiple times to put his hands in the air and to drop his gun, but each time, Mr. Handy refused.[6] He walked toward the parking area with his gun pointed down.[7] As he stepped off the curb, Defendants shot Mr. Handy nine times.[8] The tenth and final shot came less than one second later.[9] Mr. Handy died at the scene.[10]

---

[1] Docket 1 at ¶¶ 12, 14.

[2] Docket 1 at ¶ 15.

[3] Docket 1 at ¶ 16.

[4] Docket 1 at ¶ 17.

[5] Docket 1 at ¶¶ 19–20.

[6] AnchoragePolice, *Critical Incident Summary - Officer Involved Shooting - May 13, 2024*, at 09:11–09:24 (July 31, 2024), https://www.youtube.com/watch?v=U9QAgFziCy8&rco=1 (last visited Aug. 5, 2025). This video is incorporated by reference into the Complaint. *See* discussion *infra* pp. 5–7.

[7] Docket 1 at ¶¶ 25–28.

[8] Docket 1 at ¶¶ 30–33; AnchoragePolice, *Critical Incident Summary - Officer Involved Shooting - May 13, 2024*, at 09:23–09:27 (July 31, 2024), https://www.youtube.com/watch?v=U9QAgFziCy8&rco=1.

[9] Docket 1 at ¶ 33; AnchoragePolice, *Critical Incident Summary - Officer Involved Shooting - May 13, 2024*, at 09:23–09:27 (July 31, 2024), https://www.youtube.com/watch?v=U9QAgFziCy8&rco=1.

[10] Docket 1 at ¶ 34.

## JURISDICTION

The Court has jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claims pursuant to 28 U.S.C. § 1331. The Court exercises its supplemental jurisdiction over Plaintiffs' state claims pursuant to 28 U.S.C. § 1367.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." A court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory.[11] In a Section 1983 case, a court accepts the allegations in the complaint as true and construes them in favor of the plaintiff to determine whether the defendant's conduct, as alleged, violated a constitutional right that is clearly established.[12] A court may not dismiss a "complaint containing allegations that, if proven, present a winning case . . . no matter how unlikely such winning outcome may appear to the district court."[13] A court may consider certain materials in addition to the complaint in analyzing a Rule 12(b)(6) motion to dismiss, such as documents subject to judicial notice or documents incorporated by reference into the

---

[11] *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).

[12] *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016).

[13] *Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 791 (9th Cir. 2011).

complaint.[14] And a court need not accept as true any allegations in the complaint that contradict those materials.[15] In particular, when video footage has captured the events in question, and that footage has been incorporated by reference into a complaint, a court should view the facts in the light depicted by the video footage.[16]

## DISCUSSION

Plaintiffs allege that (1) Defendants used excessive force on Mr. Handy in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983; (2) Defendants deprived Plaintiffs of their due process right to familial association with Mr. Handy pursuant to the Fourteenth Amendment; and (3) Plaintiffs are entitled to damages for the wrongful death of Mr. Handy pursuant to Alaska Statutes §§ 09.55.570 and 09.55.580.[17]

In their Motion to Dismiss, Defendants seek the dismissal of all of Plaintiffs' claims. They contend that the Defendant officers: (1) used reasonable force, in compliance with the Fourth Amendment; and (2) are entitled to qualified

---

[14] *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999, 1002 (9th Cir. 2018), *cert. denied sub nom. Hagen v. Khoja*, 587 U.S. 1014 (2019).

[15] *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[16] *Scott v. Harris*, 550 U.S. 372, 381 (2007) (holding that on summary judgment, when a party's "version of events is so utterly discredited by the record that no reasonable jury could have believed him [, a court should not rely] on such visible fiction; it should . . . view[] the facts in the light depicted by the videotape").

[17] Docket 1 at ¶¶ 55–116

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 4 of 29

immunity.[18]   Defendants also assert that Plaintiffs' due process and state law claims should be dismissed because they are based on the same excessive deadly force claim.[19]

## I.     Incorporation by Reference

Plaintiff's Complaint includes six screenshots from the officers' dash camera and body camera videos, as well as multiple references to the video footage.[20] The Complaint alleges that "ALL VIDEO FOOTAGE conclusively proves that [Mr. Handy] never pointed or raised the gun at officers or any other person."[21]   It appears undisputed that Plaintiffs obtained this video footage from a *Critical Incident Summary* and other video footage posted by the Anchorage Police Department ("APD") on YouTube on July 31, 2024 and August 15, 2024.[22] Defendants provided the link to the *Critical Incident Summary* with their motion.[23] The summary was released on July 31, 2024 and contains not only the dash cam and body camera video footage, but also the 911 calls, other videos, and commentary about the incident by the Chief of Police and others.[24]   Additional

---

[18] Docket 12 at 14–33.

[19] Docket 12 at 33–36.

[20] *See* Docket 1 at 2–12.

[21] Docket 1 at 2.

[22] *See* Docket 12 at 21.

[23] Docket 12 at 21.

[24] Docket 12-1 at ¶¶ 5–10.

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 5 of 29

videos of the incident were also made available on YouTube on August 15, 2024.[25] Defendants assert that Plaintiffs' Complaint incorporates not only the video footage of the incident, but the *Critical Incident Summary* in its entirety.[26] At oral argument, Plaintiffs made it clear that they intended in their Complaint to incorporate only the video footage of the incident itself, including body camera videos, the dash camera video, and the neighbor's Ring doorbell video, but not the 911 call or APD's assessment of the incident.[27]

The doctrine of "incorporation-by-reference . . . treats certain documents as though they are part of the complaint itself."[28] Here, the Court will incorporate all of the publicly available video footage released by APD of the incident, as all of that video footage was expressly referenced in the Complaint. But the Court will not incorporate the balance of the *Critical Incident Summary* prepared after the incident by APD that was not referenced in the Complaint.[29] The Complaint does

---

[25] Docket 12 at 21; Docket 12-1 at ¶ 12.

[26] Docket 12 at 19–22 (citing Docket 1 at 1–12).

[27] Docket 22 at 18–19; *see also* Docket 1 at 1–12.

[28] *Khoja*, 899 F.3d at 1002.

[29] *See J.K.J. v. City of San Diego*, 42 F.4th 990, 997–98 (9th Cir. 2021) (holding that the district court did not err in relying on body camera video footage because the plaintiff "explicitly incorporated it by reference"), *reh'g en banc granted on other grounds and opinion vacated,* 59 F.4th 1327 (9th Cir. 2023); *Martell v. Cole*, 115 F.4th 1233, 1235 (9th Cir. 2024) ("Martell's complaint incorporates by reference a video of his arrest taken by one of the deputies' body cameras."); *Saved Mag. v. Spokane Police Dep't*, 505 F. Supp. 3d 1095, 1103 (E.D. Wash. 2020) (holding that the police body camera was incorporated by reference because plaintiffs referred to the video footage explicitly in their complaint), *aff'd*, 19 F.4th 1193 (9th Cir. 2021).

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 6 of 29
Case 3:24-cv-00178-SLG    Document 23    Filed 08/05/25    Page 6 of 29

not refer at all to the *Critical Incident Summary*, but only to the video footage of the incident itself. Moreover, the "'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."[30] The *Critical Incident Summary* includes information and analysis that would not have been available to the officers on the scene at the time of the incident and does not form the basis of the Complaint.[31]

## II. Fourth Amendment Excessive Force Claim

Plaintiffs contend that Defendants violated Mr. Handy's constitutional right to freedom from unreasonable seizure under the Fourth Amendment by their use of "excessive deadly force."[32] Defendants assert that they were "justified in firing at the aggressive suspect of a violent crime who was wielding a gun, refusing lawful commands to drop the weapon and raise his arms, and continuing to advance on the police's position during an armed stand-off."[33]

When evaluating a Fourth Amendment claim of excessive force, courts consider "whether the officers' actions are 'objectively reasonable' in light of the

---

[30] *Graham v. Conner*, 490 U.S. 386, 396 (1989); *see also Demarest v. City of Vallejo*, 44 F.4th 1209, 1226 (9th Cir. 2022) ("[A]n 'officer's use of force cannot be deemed excessive based on facts that he [or she] reasonably would not have known or anticipated' . . . ." (second alteration in original) (citation omitted)).

[31] *See Khoja*, 899 F.3d at 1002 ("[I]f the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint. Otherwise, defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims.").

[32] Docket 1 at 13.

[33] Docket 12 at 14–15.

facts and circumstances confronting them."[34]  This "requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."[35]  "Only information known to the officer at the time the conduct occurred is relevant."[36]

To determine the importance of the government's interest in the force used, a court analyzes multiple factors, including: "(1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight."[37]  In the Ninth Circuit, the "most important *Graham* factor is whether the suspect posed an immediate threat to anyone's safety."[38]  This threat must pose "a significant threat of death or serious physical injury to the officer or others."[39]  However, the Supreme Court recently rejected the "moment-of-threat rule," holding that "the 'totality of the circumstances' inquiry into a use of force has no time limit."[40]

---

[34] *Graham*, 490 U.S. at 397.

[35] *Id.* at 396 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).

[36] *Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019).

[37] *Estate of Lopez ex rel. Lopez v. Gelhaus*, 871 F.3d 998, 1005 (9th Cir. 2017) (alteration in original) (internal quotation marks omitted) (quoting *Graham*, 490 U.S. at 396).

[38] *Nehad,* 929 F.3d at 1132.

[39] *Gonzalez v. City of Anaheim*, 747 F.3d 789, 793 (9th Cir. 2014) (internal quotation marks and citation omitted).

[40] *Barnes v. Felix,* 605 U.S. __, 145 S. Ct. 1353, 1357–58 (2025).

### 1. Severity of the Crime

Here, in the early hours of May 13, 2024, Anchorage police officers, including Defendants, responded to a 911 emergency call involving domestic violence.[41] Before the officers arrived, the neighbor reported that Mr. Handy was outside the apartment complex holding "either a bat or a shotgun."[42]

"When officers respond to a domestic abuse call, they understand that violence may be lurking and explode with little warning. Indeed, more officers are killed or injured on domestic violence calls than on any other type of call."[43] Additionally, Alaska law provides that "a peace officer, with or without a warrant, *shall* arrest a person if the officer has probable cause to believe the person has, either in or outside the presence of the officer, within the previous 12 hours . . . committed domestic violence . . . whether the crime is a felony or a misdemeanor."[44]

However, "suspicion of 'domestic violence' alone" does not "provide[] sufficient justification for a given police intrusion."[45] When the suspect is separated

---

[41] Docket 1 at ¶¶ 12, 14.

[42] Docket 1 at ¶ 14.

[43] *United States v. Martinez*, 406 F.3d 1160, 1164 (9th Cir. 2005) (internal quotation marks and citations omitted).

[44] Alaska Stat. § 18.65.530(a)(1) (emphasis added).

[45] *Thomas v. Dillard*, 818 F.3d 864, 882 (9th Cir. 2016) (citing *George v. Morris,* 736 F.3d 829, 839 (9th Cir. 2013) (acknowledging the safety concerns arising from domestic violence calls but holding such concerns are diminished when the dispute appears to have concluded by the time the officers arrive on scene)).

from the victim and the domestic dispute is seemingly over, the severity of the crime has abated.[46]  When Mr. Handy came out of the apartment, he was no longer an immediate threat to victim, although her condition inside was unknown to the officers.  Consequently, based on the facts alleged in the Complaint, the need for the officers' use of deadly force based on the severity of the crime had largely dissipated.

### 2.  Immediate Threat to Officers and Others

Plaintiffs allege that although Mr. Handy was armed, he was "not posing a threat of serious physical harm" to Defendants or others when he was shot and killed.[47]  In support, Plaintiffs allege that other officers on the scene did not fire their weapons.  For example, Plaintiffs contend that Officer Boynton had his rifle pointed at Mr. Handy through the windshield of his patrol car, but he did not fire.[48]  They allege that Officer Norman backed up while keeping his rifle pointed at Mr. Handy when Mr. Handy came into his sight, but Officer Norman also did not fire his weapon.[49]  Plaintiffs have also pled that Mr. Handy was not "charging" the officers; rather, they allege he was "walking at a casual pace," and they cite to a neighbor's

---

[46] *See Smith v. City of Hemet*, 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (holding that the husband's abuse of his spouse "provide[d] little, if any, basis for the officers' use of physical force" because when the officers "arrived, [the husband] was standing on his porch alone and separated from his wife").

[47] Docket 1 at ¶ 57.

[48] Docket 1 at ¶ 38.

[49] Docket 1 at ¶ 40.

statement that she "never saw [Mr. Handy] raise the gun, [she] never saw him charge at the officers, and [she] never felt like any of [them] were in imminent danger until the officers started shooting toward [their] full apartment building."[50] In other cases, the Ninth Circuit has found that a reasonable fact-finder could conclude that officers were not in apparent danger when a suspect held a weapon at his or her side and did not make any threatening or aggressive actions.[51] Viewing the allegation in Plaintiffs' Complaint in the light most favorable to Plaintiffs, and drawing all reasonable inferences in their favor, the Complaint contains sufficient factual allegations that, if proven, could support a reasonable fact-finder's conclusion that Mr. Handy did not pose an immediate threat to the officers or others when Defendants used deadly force against Mr. Handy.

### 3. Actively Resisting or Evading Arrest

According to Plaintiffs' Complaint, when officers arrived at the apartment complex, Mr. Handy was inside his apartment. Using a loudspeaker, Officer

---

[50] Docket 1 at ¶¶ 23, 45.

[51] *See e.g.*, *Hughes v. Kisela*, 841 F.3d 1081, 1085–87 (9th Cir. 2016) (rejecting summary judgment to a police officer where a woman was shot as she approached another person while holding a knife down by her side, but did not make any aggressive or threatening actions and did not understand what was happening when the officers yelled for her to drop the knife); *Hayes v. Cnty. of San Diego*, 736 F.3d 1223, 1233–34 (9th Cir. 2013) (reversing a district court's grant of summary judgment to a county and deputies where a victim approached officers while armed with a knife, but the suspect "was not charging them," "had not been ordered to stop," "was given no warning," and was not witnessed acting erratically with the weapon); *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 324–25 (9th Cir. 1991) (rejecting summary judgment to police officers where the suspect had a gun, but the suspect was not pointing it at the officers, and was not directly facing the officer who opened fire).

Boynton announced the police presence and directed Mr. Handy to come out of the apartment.[52]  Mr. Handy exited his apartment carrying a shotgun.[53]  Plaintiffs allege that Mr. Handy was following the officers' orders by exiting his apartment and walking out to the parking lot.[54]  Plaintiffs further contend that Mr. Handy was "walking at a casual pace" toward the officers—conduct inconsistent with actively resisting arrest.[55]  Viewed in the light most favorable to Plaintiffs, these factual allegations if proven could lead a reasonable jury to find that Mr. Handy was not actively resisting or evading arrest.

### 4.  Other Factors

Additional relevant factors in the reasonableness inquiry "include the availability of less intrusive alternatives to the force employed, whether proper warnings were given and whether it should have been apparent to officers that the person they used force against was emotionally disturbed."[56]  "A prior warning is all the more important where, as here, the use of lethal force is contemplated."[57]  However, officers "need not avail themselves of the least intrusive means of

---

[52] Docket 1 at ¶ 16.

[53] Docket 1 at ¶¶ 19–20.

[54] Docket 1 at ¶ 19.

[55] Docket 1 at ¶ 23.

[56] *Glenn v. Washington Cnty.*, 673 F.3d 864, 872 (9th Cir. 2011).

[57] *S.R. Nehad v. Browder*, 929 F.3d 1125, 1137–38 (9th Cir. 2019).

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 12 of 29
Case 3:24-cv-00178-SLG    Document 23    Filed 08/05/25    Page 12 of 29

responding to an exigent situation; they need only act within that range of conduct we identify as reasonable."[58]

Here, Plaintiffs allege that the officers only warned Mr. Handy that the K-9 dog would be used if he did not exit his apartment; they did not warn him that deadly force would be used if he did not stop or drop the gun when ordered.[59] Given these allegations, a fact-finder could find the failure to provide a deadly force warning as some evidence of objective unreasonableness.

In sum, the Court cannot determine, based solely on the Complaint and the video footage of the incident, that the amount of force used did not constitute a violation of the Fourth Amendment. Further, the officers have not been deposed, and the parties have not yet conducted any other discovery; and yet a district court must "analyze the acts of each individual defendant in its qualified immunity analysis."[60] Moreover, at oral argument, Defendants suggested that the Court should rule only on the second prong of immunity—the clearly established prong discussed below.[61] Further, Defendants acknowledged they were unaware of any case in which the Ninth Circuit has affirmed the dismissal of an excessive force

---

[58] *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994).

[59] Docket 1 at ¶¶ 17–18.

[60] *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000).

[61] *See* Docket 22 at 10–11.

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 13 of 29
Case 3:24-cv-00178-SLG     Document 23     Filed 08/05/25     Page 13 of 29

claim involving the use of deadly force at the Rule 12(b)(6) stage of a case.[62]  The Court therefore finds that Plaintiffs have adequately stated a claim for relief that Defendants violated Mr. Handy's constitutional right to be free from excessive force.[63]

## III.    Clearly Established Law

The doctrine of qualified immunity shields government actors from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[64] Defendants assert that this action should be dismissed because they are entitled to qualified immunity.  Government officials are not entitled to qualified immunity as a matter of law if (1) the facts taken in the light most favorable to the plaintiff show that the officials' conduct violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation.[65]  Qualified immunity applies unless both prongs of the inquiry are satisfied.[66]  As discussed above, the Court has concluded that facts alleged in the Complaint, taken in the light most favorable

---

[62] *See* Docket 22 at 8–10.

[63] The Ninth Circuit has held that "summary judgment should be granted sparingly in excessive force cases." *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014). Presumably even greater restraint should be exercised when ruling earlier in the case on a Rule 12(b)(6) motion seeking dismissal in an excessive force case.

[64] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted).

[65] *See Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1066 (9th Cir. 2016) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

[66] *See Pearson*, 555 U.S. at 232.

to Plaintiffs, show that the officers' conduct violated Mr. Handy's constitutional right. Thus, the Court turns to the second prong of the qualified immunity analysis—whether that right was clearly established at the time of this incident.

Qualified immunity ensures that "the officer had fair notice that her conduct was unlawful" when "judged against the backdrop of the law at the time of the conduct," thus protecting "all but the plainly incompetent or those who knowingly violate the law."[67] A Rule 12(b)(6) dismissal based on qualified immunity "is not appropriate unless [a court] can determine, based on the complaint itself, that qualified immunity applies."[68] In the Ninth Circuit, "[i]f the operative complaint contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right, then plaintiffs are entitled to go forward with their claims."[69]

When defining "clearly established law," the dispositive question is "whether the violative nature of particular conduct is clearly established."[70] In other words, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[71] A case directly on point is

---

[67] *Kisela v. Hughes*, 584 U.S. 100, 138 (2018) (per curiam) (internal quotation marks and citations omitted).

[68] *O'Brien,* 818 F.3d at 936 (internal quotation marks and citation omitted).

[69] *Keates v. Koile*, 883 F.3d 1228, 1235 (9th Cir. 2018) (internal quotation marks and citation omitted).

[70] *Ashcroft v. al-Kidd,* 563 U.S. 731, 742 (2011).

[71] *Anderson v. Creighton,* 483 U.S. 635, 640 (1987).

not required, "but existing precedent must have placed the statutory or constitutional question beyond debate."[72]  This is "especially important in the Fourth Amendment context, where the Court has recognized that it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts."[73]  A district court errs if it fails "to identify a case where an officer acting under similar circumstances as [the officer here] was held to have violated the Fourth Amendment."[74]

Plaintiffs maintain that the Ninth Circuit cases of *George v. Morris*,[75] *Estate of Lopez by & through Lopez v. Gelhaus*,[76] and *S.R. Nehad v. Brower*[77] render it clearly established that, when the facts as alleged by Plaintiffs in their Complaint are accepted as true, Defendants' shooting of Mr. Handy violated the Constitution.

In *George,* Carol George called 911 in the early hours of the morning, reporting that her husband, Donald George, had a gun.  Her husband wanted her to hang up, so she did.  Deputies were dispatched to the residence for a domestic disturbance involving a firearm.  Ms. George met them at the door and asked them to be quiet and not scare her husband.  She told the officers that her husband was

---

[72] *al-Kidd,* 563 U.S. at 741 (citation omitted).

[73] *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks and citation omitted).

[74] *White v. Pauly*, 580 U.S. 73, 79 (2017).

[75] 736 F.3d 829 (9th Cir. 2013).

[76] 871 F.3d 998 (9th Cir. 2017).

[77] 929 F.3d 1125 (9th Cir. 2019).

on the patio with his gun. Several officers went to the backyard. Mr. George emerged from the house onto a balcony over the backyard. One officer stated that when Mr. George came into the view, the gun was pointed down. Within 12 seconds of the deputies broadcasting that Mr. George had a gun, approximately nine shots were fired. Mr. George died later at the hospital. In her opposition to summary judgment, Ms. George presented evidence that "called into question whether [Mr. George] ever manipulated the gun, or pointed it directly at deputies."[78]

The Ninth Circuit upheld the denial of summary judgment of the plaintiff's excessive force claim; the Circuit reasoned that "a reasonable fact-finder could conclude that the deputies' use of force was constitutionally excessive."[79] The Circuit quoted *Harris v. Roderick* for its statement that "law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed."[80] But the Circuit added, "[i]f the person is armed—or reasonably suspected of being armed—a furtive movement, harrowing gesture, or serious verbal threat might create an immediate threat."[81] The Circuit also recognized that "an officer's concern about his or her safety" is diminished "when the domestic dispute is seemingly over by the time the officers

---

[78] *George*, 736 F.3d at 832–33.

[79] *Id.* at 838.

[80] *Id.* (quoting 126 F.3d 1189, 1204 (9th Cir. 2017)).

[81] *Id.*

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 17 of 29
Case 3:24-cv-00178-SLG     Document 23     Filed 08/05/25     Page 17 of 29

begin their investigation,"[82] noting that, similar to *Smith v. City of Hemet,* "[Ms. George] was unscathed and not in jeopardy when deputies arrived" and Mr. George was separated from his wife.[83]

In *Lopez*, thirteen-year-old Andy Lopez was walking on a sidewalk in the middle of the afternoon and carrying a toy gun designed to replicate an AK-47.[84] Officer Gelhaus had never seen a person walking on a street carrying an AK-47 in broad daylight and had confiscated toy guns on three previous occasions.[85] While on patrol, Officer Gelhaus saw Andy walking at a normal pace on the street in the opposite direction with what he thought was an AK-47 pointed downward.[86] He averred that he believed Andy was a teen and was not an individual associated with gangs in the area.[87] Officer Gelhaus approached Andy, shouted to drop the gun, and as Andy turned, Officer Gelhaus shot Andy seven times.[88] The Ninth Circuit determined that Officer Gelhaus "deployed deadly force while Andy was

---

[82] *Id.* at 839 (internal quotation marks omitted) (quoting *Mattos v. Agarano,* 661 F.3d 433, 450 (9th Cir. 2011)).

[83] *George,* 736 F.3d at 839 (citing 394 F.3d 689, 703 (9th Cir. 2005) (en banc) (holding that "a husband's criminal abuse of his spouse 'provide[d] little, if any, basis for the officers' use of physical force' because when law enforcement 'arrived [the husband] was standing on his porch alone and separated from his wife.'")).

[84] *Lopez,* 871 F.3d at 1001–02.

[85] *Id.* at 1002.

[86] *Id.*

[87] *Id.*

[88] *Id.* at 1002–03.

standing on the sidewalk holding a gun that was pointed down at the ground" and shot Andy "without having warned [him] that such force would be used, and without observing any aggressive behavior."[89]

The Ninth Circuit affirmed the trial court's denial of the defendants' motion for summary judgment, holding that a reasonable jury could find that the officer's use of deadly force was not objectively reasonable.[90] The Circuit reasoned that, viewing the facts in the light most favorable to the plaintiffs, there was no threatening behavior on Andy's part and Andy did not point the weapon at the officer.[91]

In *Nehad,* the San Diego Police Department responded to a 911 call reporting a man making threats with a knife.[92] Officer Browder arrived at the scene and observed Mr. Nehad walking at a steady pace towards him.[93] Officer Browder exited his vehicle and, less than five seconds later, fatally shot Mr. Nehad.[94] The facts, viewed in the light most favorable to Mr. Nehad, were that Officer Browder "responded to a misdemeanor call, pulled his car into a well-lit alley with his high

---

[89] *Id.* at 1013.

[90] *Id.* at 1013, 1022. The Ninth Circuit also held that the law was clearly established at the time of Andy's shooting that the officer's conduct was unconstitutional. *Id.* at 1018–19 (citing *George,* 736 F. 3d at 832–39).

[91] *Id.* at 1013.

[92] *Nehad,* 929 F.3d at 1130.

[93] *Id.* at 1131.

[94] *Id.*

beam headlights shining into Nehad's face, never identified himself as a police officer, gave no commands or warnings, and then shot Nehad within a matter of seconds, even though Nehad was unarmed, had not said anything, was not threatening anyone, and posed little to no danger to Browder or anyone else."[95] The Ninth Circuit concluded that "[u]nder these facts, even if [the officer] had reasonably perceived Nehad as holding a knife, a reasonable factfinder could conclude that Nehad did not pose a danger to anyone."[96]

Defendants counter that the Ninth Circuit has "expressly rejected the 'unreasonable argument' that 'an armed individual can pose a threat *only* when that person brandishes the weapon in a threatening manner.'"[97] Defendants compare this case to *Napouk v. Las Vegas Metropolitan Police Department*. There, the Ninth Circuit affirmed summary judgment for the defendants.[98] The

---

[95] *Id.* at 1141.

[96] *Id.* at 1134. The Ninth Circuit also held that it was clearly established that the officer's use of deadly force was prohibited in the specific context and at the time of the incident. *Id.* at 1141 (first quoting *Torres v. City of Madera,* 648 F.3d 1119, 1128 (9th Cir. 2011) ("[F]ew things in our case law are as clearly established as the principle that an officer may not 'seize an unarmed, nondangerous suspect by shooting him dead' in the absence of 'probable cause to believe that the [ ] suspect poses a threat of serious physical harm . . . .'" (alterations in original)); and then quoting *Deorle v. Rutherford*, 272 F.3d 1272, 1285 (9th Cir. 2001) ("[N]early twenty years ago, we explained that it was sufficiently established that a police officer could not reasonably use a beanbag round on 'an unarmed man who: has committed no serious offense, . . . has been given no warning of the imminent use of such a significant degree of force, poses no risk of flight, and presents no objectively reasonable threat to the safety of the officer or other individuals.'" (second alteration in original))).

[97] Docket 17 at 11 (emphasis in original) (quoting *Napouk v. Las Vegas Metro. Police Dep't*, 123 F.4th 906, 917 (9th Cir. 2024)).

[98] *Napouk,* 123 F.4th at 912.

---

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 20 of 29

Circuit concluded that the undisputed facts were that "Napouk was behaving erratically, holding what the officers reasonably perceived to be a lethal weapon, repeatedly ignoring their commands to stop and to drop it, and repeatedly deliberately advancing toward them with the weapon in his hand."[99]  The officers also warned Mr. Napouk that they would shoot if he "took another step" and rather than comply, Mr. Napouk continued to move the object around and pointed it in various directions and continued to advance toward the officers.[100]  The Circuit concluded that "the undisputed facts . . . show[ed] that Napouk posed an immediate threat."[101]  Considering all of the *Graham* factors, the Circuit held that "[t]he officers' conduct did not violate the Fourth Amendment."[102]

The events at issue in this case took place in May 2024.  *Napouk* was decided in December 2024.  Thus, it has little bearing on what was clearly established law at the time of this incident.

In this case, Mr. Handy heeded the officers' order to exit his apartment, although he did not heed the officers' orders to put his hands up and to drop the gun.[103]  Like Andy Lopez and Donald George, Mr. Handy's gun was pointed down

---

[99] *Id.* at 918.

[100] *Id.*

[101] *Id.* at 919.

[102] *Id.* at 922.

[103] *See* Docket 1 at ¶¶ 16–19; AnchoragePolice, *Critical Incident Summary - Officer Involved Shooting - May 13, 2024*, at 09:11–09:24 (July 31, 2024), https://www.youtube.com/watch?v=U9QAgFziCy8&rco=1.

in the moments before he was shot.[104]  A reasonable fact-finder might determine that Mr. Handy's actions did not constitute a "furtive movement, harrowing gesture, or serious verbal threat that might create an immediate threat" to the police officers on the scene or the inhabitants of the apartment complex.[105]  Moreover, the Complaint alleges that the officers provided no warning that deadly force would be used.[106]

As discussed above, viewing the sparse record at this preliminary stage of the case in the light most favorable to Plaintiffs, the Complaint adequately alleges a violation of the Fourth Amendment.  Further, the similarity of Plaintiffs' factual allegations to the situations in *George, Lopez,* and *Nehad* would put Defendants on notice that firing ten shots at an armed individual who does not pose an immediate threat, with his gun pointed down, was unconstitutional.  Therefore, Defendants' motion to dismiss Plaintiffs' Fourth Amendment claim of excessive force based on qualified immunity must be denied.  However, a "denial of qualified immunity at this stage of the proceedings does not mean that this case must go to trial."[107]  Defendants may move for summary judgment after the record has been developed by discovery.

---

[104] Docket 1 at ¶¶ 26–30.

[105] *George*, 736 F.3d at 838.

[106] Docket 1 at ¶ 18.

[107] *O'Brien*, 818 F.3d at 936.

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 22 of 29

## IV. Fourteenth Amendment Right to Familial Association

Plaintiffs allege that Defendants violated their Fourteenth Amendment due process right to associate with Mr. Handy as their son and as their father.[108] The Ninth Circuit "has recognized that parents have a Fourteenth Amendment liberty interest in the companionship and society of their children,"[109] including adult children.[110] The Ninth Circuit has also recognized that a child has a constitutionally protected liberty interest in the "companionship and society" of a parent.[111] A denial of due process under the Fourteenth Amendment must "be tested by an appraisal of the totality of facts in a given case."[112]

Police action violates substantive due process if it "sufficiently shocks the conscience" because it is taken with either: "(1) deliberate indifference or (2) a purpose to harm[,] unrelated to legitimate law enforcement objectives."[113] In situations where "actual deliberation [by the officer] is practical," that officer's "deliberate indifference may suffice to shock the conscience."[114] However, in the situation where an officer makes a "snap judgment because of an escalating

---

[108] Docket 1 at ¶¶ 70–97.

[109] *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).

[110] *Sinclair v. City of Seattle*, 61 F.4th 674, 678–79 (9th Cir. 2023).

[111] *Hayes*, 736 F.3d at 1229–30.

[112] *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 850 (1998).

[113] *Nehad*, 929 F.3d at 1139 (alteration in original) (internal quotation marks and citation omitted).

[114] *Hayes,* 736 F.3d at 1230 (alteration in original) (internal quotation marks and citation omitted).

situation," the officer's "conduct may be found to shock the conscience only if he acts with a purpose to harm unrelated to legitimate law enforcement objectives."[115] The Ninth Circuit applies "the purpose-to-harm standard when officials were required to make 'repeated split-second decisions' about how best to respond to a risk, such as during a high-speed car chase or when confronting a threatening, armed suspect."[116] The Ninth Circuit has stated that "it may be possible for an officer's conduct to be objectively unreasonable [under the Fourth Amendment] yet still not infringe the more demanding standard that governs substantive due process claims [under the Fourteenth Amendment]."[117]

Plaintiffs contend that Defendants' conduct "shocks the conscience" under either standard.[118] They allege that Defendants' conduct amounted to "deliberate indifference" because Defendants had "time to deliberate on their conduct," but chose to shoot Mr. Handy.[119] They point again to Officer Boynton's statement that he had his patrol rifle facing Mr. Handy through the windshield of his patrol car, but he did not fire it, and to Officer Norman's body camera footage indicating that he

---

[115] *Id.*

[116] *Peck v. Montoya*, 51 F.4th 877, 893 (9th Cir. 2022) (quoting *Porter v. Osborn*, 546 F.3d 1131, 1139 (9th Cir. 2008)).

[117] *Ochoa v. City of Mesa*, 26 F.4th 1050, 1057 (9th Cir. 2022) (alterations in original) (internal quotation marks and citation omitted).

[118] Docket 1 at ¶¶ 79–97.

[119] Docket 1 at ¶ 82.

backed up when Mr. Handy came into sight, but he did not fire his weapon.[120]

Plaintiffs also allege that Defendants acted with "purpose to harm and with no legitimate law enforcement purpose" because they "each shot and killed him despite [Mr. Handy] not presenting any threat, as his gun was pointed down toward the ground below him."[121] They allege that the officers "acted with a severe and sudden escalation of the situation when [Mr. Handy]'s only violation was non-compliance."[122] Plaintiffs point to the neighbor's statement that she "never felt like any of [them] were in imminent danger until the officers started shooting toward [their] full apartment building," and Plaintiffs indicate that the body camera videos and dash camera video show that the Defendants' use of deadly force was "disproportionate to the nature of the threat."[123]

When all the facts plead in the Complaint are accepted as true and all reasonable inferences are drawn in favor Plaintiffs, Plaintiffs' due process claim nonetheless warrants analysis under the more stringent "purpose to harm" standard. Officers were called to the property for a domestic disturbance, Mr. Handy emerged from his apartment as ordered by police officers, but he was armed and continued to approach the officers despite commands to raise his

---

[120] Docket 1 at ¶¶ 83–86.

[121] Docket 1 at ¶ 88.

[122] Docket 1 at ¶ 93.

[123] Docket 1 at ¶¶ 90–91.

hands and drop his weapon. Consequently, the situation was "quickly evolving and escalating, prompting repeated split-second decisions."[124]

Regarding Defendants' first nine shots, Plaintiffs' allegations in the Complaint, even when accepted as true, cannot show that Defendants acted "with the intent to harm" or with "no legitimate law enforcement purpose for shooting."[125] Even if a reasonable fact-finder could find that Defendants used excessive force when they shot Mr. Handy, the officers' shooting in response to Mr. Handy's armed, continued advancement toward them was aimed at the legitimate law enforcement objectives of stopping an armed suspect, self-defense, and defense of each other.[126] Therefore, for the first nine shots, Plaintiffs' Fourteenth Amendment claim fails.

Plaintiffs allege that the tenth and final shot was separate and apart from the first nine shots and shows a "clear intent to harm" because it was fired "after Mr. Handy fell to the ground and the gun was no longer in his hand."[127] But in the videos of the incident that Plaintiffs incorporated by reference, the final shot is fired after a pause of less than one second.[128] At the time of the shooting, it was clearly

---

[124] *Napouk*, 123 F.4th at 923.

[125] Docket 1 at ¶ 96.

[126] *See Napouk*, 123 F.4th at 923.

[127] Docket 1 at ¶¶ 94–95.

[128] *See* AnchoragePolice, *Critical Incident Summary - Officer Involved Shooting - May 13, 2024*, at 09:23–09:27 (July 31, 2024), https://www.youtube.com/watch?v=U9QAgFziCy8&rco=1.

established that an officer cannot continue to use force against a suspect who is "on the ground and appears wounded" without first reassessing the situation, because the suspect "may no longer pose a threat."[129]   However, "[w]hether excessive or not," two volleys of shooting "in rapid succession, without time for reflection," serve "the legitimate purpose of stopping a dangerous suspect" and do not violate the Fourteenth Amendment.[130]   In this case, the tenth shot was fired in rapid succession to the first nine shots and occurred without time for reflection.[131] No reasonable fact-finder could find that this final shot was made without a legitimate law enforcement purpose.

For the foregoing reasons, Defendants' motion to dismiss Plaintiffs' familial association claim pursuant to the Fourteenth Amendment is GRANTED.  Further, the Court finds that permitting leave to amend would be futile as to this claim, because there are no additional facts consistent with the Complaint and video footage that could be proved that would constitute a valid and sufficient familial

---

[129] *See Zion v. Cnty. of Orange*, 874 F.3d 1072, 1075–77 (9th Cir. 2017) (holding summary judgment to defendants was precluded on familial association claim when, after a first volley of nine shots, the suspect was on the ground "curled up in the fetal position" when the officer took "a running start and stomp[ed] on Zion's head three times" because "[a] jury could reasonably find that [the officer] knew or easily could have determined that he had already rendered Zion harmless").

[130] *Id.* at 1077; *cf. Est. of Hernandez ex rel. Hernandez v. City of Los Angeles*, 139 F.4th 790, 797, 801 (9th Cir. 2025) (holding that the officer "had an obligation to reassess the situation before continuing her fire, and a jury could find that her failure to do so was unreasonable" where she paused for about 1.4 seconds between the second and third volleys).

[131] *See* AnchoragePolice, *Critical Incident Summary - Officer Involved Shooting - May 13, 2024*, at 09:23–09:27 (July 31, 2024), https://www.youtube.com/watch?v=U9QAgFziCy8&rco=1 (last visited Aug. 5, 2025).

association claim.[132]

## V. Wrongful Death and Survival Action Pursuant to Alaska Statutes §§ 09.55.570, 09.55.580

Plaintiff Monte Handy, as personal representative of the Estate of Mr. Handy, alleges that Mr. Handy died because of the wrongful conduct of Defendants when they used excessive deadly force.[133]   Defendants counter that this claim should be dismissed because they used reasonable force, are shielded by qualified immunity, and did not engage in wrongful conduct when they fatally shot Mr. Handy.[134]

Under Alaska law, "[a]ll causes of action by one person against another . . . survive to the personal representative[]."[135]  Further, Alaska Statute § 09.55.580(a) provides that:

> [W]hen the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had the person lived, against the latter for an injury done by the same act or omission.

For the same reason that the Court finds Plaintiffs have adequately pled a claim of excessive force under the Fourth Amendment, they may be able to recover

---

[132] *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011) (holding amendment is futile when the deficiencies in the pleadings cannot "be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint" (internal quotation marks and citation omitted)).

[133] Docket 1 at ¶¶ 110–16.

[134] Docket 12 at 33–34.

[135] Alaska Stat. § 09.55.570.

Case No. 3:24-cv-00178-SLG, *Handy, et al. v. Jones, et al.*
Order Re Motion to Dismiss
Page 28 of 29

damages pursuant to the Alaska wrongful death and survival statutes. Defendants' motion to dismiss these claims is DENIED.

## CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion to Dismiss at Docket 12 is GRANTED IN PART AND DENIED IN PART, as follows:

Defendants' Motion to Dismiss is GRANTED with regard to Plaintiffs' due process claim for violation of the right to familial association pursuant to the Fourteenth Amendment (Count Two). Count Two is DISMISSED with prejudice and without leave to amend.

In all other respects, Defendants' Motion to Dismiss is DENIED. Defendants must serve their Answer within 14 days after the date of this order pursuant to Federal Rule of Civil Procedure 12(a)(4)(A).

DATED this 5th day of August 2025.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE